216 B.R. 306 (1998)
In re Michael A. GALLO, Jr.
SANFORD INSTITUTE FOR SAVINGS, Plaintiff/Appellant
v.
Michael A. GALLO, Jr., Defendant/Appellee.
BAP No. EP 97-055.
United States Bankruptcy Appellate Panel of the First Circuit.
January 16, 1998.
*307 Thomas C. Bradley and Michael K. Martin, Petrucelli & Martin, Portland, ME, on brief, for appellant.
James F. Molleur, Woodman & Edmunds, P.A., Biddeford, ME, on brief, for appellee.
Before: HILLMAN, BOROFF and QUEENAN, U.S. Bankruptcy Judges.
HILLMAN, Bankruptcy Judge.
Appellee/Defendant, Michael Gallo ("Debtor") filed a petition under Chapter 7 on June 19, 1996. In October, 1996, Plaintiff/Appellant Sanford Institute for Savings ("SIS") filed an adversary complaint seeking a determination that the loan it had made to the Debtor was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Using the justifiable reliance standard set forth in Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Bankruptcy Court found that although the Debtor had made intentional fraudulent representations to SIS and SIS had relied on these representations to its detriment, its reliance was not justifiable. SIS appeals from that decision and we now affirm.
I. Background
A. The Bankruptcy Court's findings of fact
In December, 1989, the Debtor approached Robert Normand, president of SIS, and asked that SIS issue a letter of credit in the amount of $250,000 in favor of Peoples Heritage Bank ("Bank"). The Debtor was a real estate developer and a long time customer of SIS who conducted his business through Normand exclusively. Normand asked the Board of Directors to approve the Debtor's application. The Board of Directors agreed to issue the letter of credit, asking as security a second mortgage on the Debtor's home in Sanford, Maine ("Sanford Property") and a second mortgage on property the Debtor was developing in Ogunquit, Maine. SIS held the first mortgage on the Sanford Property, which it had taken and recorded in 1979.
Normand presented the loan documents to the Debtor, who signed them in Normand's presence. Several of the documents required the signature of the Debtor's wife, Gail Gallo. The Debtor left SIS and came back with Gail Gallo's signature on the note and the mortgage and Normand signed as a witness to both the Debtor's and Gail Gallo's signatures. Unbeknownst to SIS, the Debtor had forged Gail Gallo's signature. Also unbeknownst to SIS, the Debtor had transferred his interest in the Sanford Property to Gail Gallo five months previously as part of a separation agreement. Based on the documents, SIS issued the letter of credit. SIS did not conduct a title search or in any way verify the Debtor's interest in the Sanford property or the genuineness of Gail Gallo's signature. Normand testified that SIS usually did conduct a title search, but did not in this case because of its longstanding relationship with the Debtor. In July, 1991, the Bank drew on the letter of credit and SIS honored the draft. The Debtor did not reimburse SIS for its payment under the letter of credit, and in 1993 SIS obtained a default judgment against the Debtor.
B. The Bankruptcy Court's conclusions of law
The court noted that to prevail under 523(a)(2)(A)[1], a creditor must show that a *308 debtor knowingly made a false statement with the intent to deceive the creditor, upon which statement the creditor justifiably relied to its detriment. Looking at the facts, the court made the following conclusions of law:
1. SIS proved all the elements of fraud except justifiable reliance.
2. SIS, as a sophisticated plaintiff, had an obligation to conduct a cursory investigation, i.e., a title search.
3. When SIS failed to follow its own practice of doing a title search, it assumed the risk that its security would be worthless.
4. Without a witness to Gail Gallo's signature, SIS had no reason to believe that it was in fact hers, and again assumed the risk that it might not be.
5. SIS relied on the Debtor's representations, but its reliance was not justifiable.
II. Standard of Review
Findings of fact are not set aside unless clearly erroneous, whereas conclusions of law are subject to de novo review. Fed. R.Bankr.P. 7052(a). The parties agree that the Bankruptcy Court applied the correct legal standard, but they disagree as to whether the court correctly applied the law to the facts. A trial judge's determination of justifiable reliance is one of mixed law and fact. Field v. Mans, 210 B.R. 1, 5 (1st Cir. BAP 1997), rev'g 200 B.R. 293 (Bankr.D.N.H. 1996), on remand from 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). It is a conclusion of law to the degree it applies the legal standard of justifiable reliance and a finding of fact to the extent it determines the plaintiff's knowledge and intelligence and whether someone with that knowledge and intelligence would see that information as a warning of deception. Id.
III. Discussion
The only issue on appeal is justifiable reliance. SIS contends that the Bankruptcy Court erred as a matter of law in finding that its reliance on the Debtor's false representations was not justifiable. Specifically, SIS argues that by imposing a duty to investigate, the court held SIS to a reasonable reliance standard rather than to a justifiable reliance standard, contrary to the mandate of Field v. Mans.
A. The justifiable reliance standard

1. The Bankruptcy Code

11 U.S.C. § 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." The Code is silent regarding reliance on the fraud; however, most courts have regularly required some reliance. They disagreed, however, as to whether the reliance should be reasonable, justifiable or actual.

2. Field v. Mans

In Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Supreme Court agreed that reliance was required and chose justifiable reliance as the standard. Id. at 74-75, 116 S.Ct. at 446. In that case, the owners/sellers of land extended credit to the buyer and took back a second mortgage on the property. Id. at 61, 116 S.Ct. at 439. The buyer was required to obtain the sellers' permission before transferring the property but asked for it only after he had already completed the transfer. Id. at 62, 116 S.Ct. at 440. The buyer filed for bankruptcy relief and the sellers claimed the debt was non-dischargeable since the letters were fraudulent and caused the sellers not to call the loan. Id.[2] The lower courts found that the sellers had relied on the letters to their detriment but that the reliance was unreasonable since a reasonable person would have checked the title after denying the buyer permission to sell. Id. at 63, 116 S.Ct. at 440.
*309 In choosing the standard of reliance, the Supreme Court first noted that fraud is a common law tort. Id. at 70, 116 S.Ct. at 444. It then reviewed case law and tort treatises as they existed in 1978 when section 523(a)(2)(A) was enacted and concluded that reliance need only be justifiable. Id. at 70-75, 116 S.Ct. at 444-446. Because the Bankruptcy Court applied a reasonable reliance standard, the Court remanded the case with instructions to apply the standard of justifiable reliance. Id. at 77, 116 S.Ct. at 447.

3. The Restatement (Second) of Torts

The Supreme Court relied heavily on the Restatement (Second) of Torts ("Restatement") in arriving at and explicating the justifiable reliance standard. Section 537 of the Restatement pronounces the general rule that the recipient of a fraudulent misrepresentation must not only actually rely on the fraud, but that the reliance must also be justifiable. RESTATEMENT (SECOND) OF TORTS § 537 (1976).
Justifiability is explained in §§ 540, 541, and 545A. The comment to § 545A (contributory negligence) gives the most detail:
Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that the conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases. Negligent reliance and action sometimes will not be justifiable, and the recovery will be barred accordingly . . . under the rule stated in s 540, the recipient of a fraudulent misrepresentation is not required to investigate its truth, even when a reasonable man of ordinary caution would do so before taking action; and it is only when he knows of the falsity or it is obvious to him that his reliance is not justified. When he proceeds in the face of this knowledge, his conduct is more analogous to assumption of risk than to contributory negligence.
RESTATEMENT (SECOND) OF TORTS § 545A cmt. b (1976).
Section 540 asserts that the recipient may be justified on relying on a representation without investigation if the falsity is not obvious to him. The comments to § 540 and § 541 demonstrate that this does not mean there is an absolute rule stating that the plaintiff never has a duty to investigate; the plaintiff may not turn a blind eye if the falsity is obvious. Whether the falsity is obvious depends on the plaintiff's experience and knowledge. The Restatement makes it clear that whether the reliance is justified is subjective and must be decided on a case by case basis.
B. Application of the standard
SIS argued that two events together resulted in the fraud that caused its harm: the Debtor's concealed transfer of the property to Gail Gallo, and the Debtor's forging of Gail Gallo's signature on the note and mortgage. SIS argues that it was justified in relying on the representations because it had a first mortgage on the Sanford Property; a long standing business relationship with the Debtor; no reason to know that the Debtor no longer owned the Sanford Property; and no reason to know that the Debtor had forged Gail Gallo's signature.
The crux of SIS's argument is that SIS had no duty to investigate Gallo's representations because they were not obviously false; SIS's sophistication only comes into play in determining the obvious falsity of the representations, but that it has no greater duty as a bank to investigate than a private unsophisticated lender would.
In Field v. Mans, the Court provides two examples of justifiable reliance, both drawn from the Restatement. First, as SIS specifically notes, the Court describes the buyer of land who receives from a seller the false representation that the property is free of encumbrances. "[A]ccording to the Restatement [§ 540, illus. 1], a buyer's reliance on this factual representation is justifiable, even if he could have `walk[ed] across the street to the office of the register of deeds in the courthouse' and easily have learned of an unsatisfied mortgage." Field v. Mans, 516 *310 U.S. at 70-72, 116 S.Ct. at 444.[3] But second and more germane here, the Court provides the Restatement example of the buyer of an unsound horse. Here, the Court sets limits on justifiable reliance:
As a comment to § 541 explains, a person is "required to use his senses, and cannot recover if he blindly relies upon a representation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has no experience with horses." Id. § 541, Comment a.
Id.
Field v. Mans teaches that the justifiability of reliance on a misrepresentation is subjective; that is, whether reliance is justifiable must be determined by first assessing the perception of the recipient of the representation, giving effect to the recipient's knowledge and experience. A bank that receives a mortgage and fails to check at the registry of deeds on its validity and priority intentionally blinds itself as to the only information it really needs  the existence of its collateral.
SIS's interpretation of justifiable reliance gives priority to the Restatement § 540 over §§ 541 and 545A. Section 540 stands for the proposition that there is no duty to investigate simply because a reasonable person would have done so. Section 545A tells us that justification depends on the qualities and characteristics of the particular plaintiff. Some plaintiffs may justifiably rely on particular representations where others may not. Certain plaintiffs in certain situations will have to walk across the street to check the title. SIS is one of those plaintiffs. SIS usually did check the title when taking a mortgage. Its officer signed as a witness without actually witnessing the signings. We are not saying that SIS should have known better as a reasonable lender, but that SIS did know better as SIS.[4]
III. Conclusion
Justifiable reliance is a subjective standard. As the Supreme Court stated, "[n]aifs may recover at common law and in bankruptcy, but lots of creditors are not at all naive. The subjectiveness of justifiability cuts both ways . . ." Field v. Mans, 516 U.S. 59, 76, 116 S.Ct. 437, 446-447, 133 L.Ed.2d 351 (1995). Given the facts of this particular case and the qualities of this particular plaintiff, we find that reliance was not justifiable. This case is not a contest between a "thief" and an "innocent." This case asks whether Field v. Mans should be extended to protect a party with superior knowledge and ability, which violates its own as well as professional custom and puts itself in harm's way. We answer no. We therefore affirm the decision of the Bankruptcy Court.
QUEENAN, Bankruptcy Judge, dissenting.
I respectfully dissent. I would reverse, but not on the basis of a clearly erroneous factual finding. The very facts found by the *311 bankruptcy judge demonstrate a misapplication of the legal standard of justifiable reliance.[1]
The majority purports to apply the relatively subjective principle of justifiable reliance. It stresses that SIS is a sophisticated lender which understood the significance of a title search. In the view of the majority, because of its "superior knowledge and ability" SIS should have conducted a title search to be in justifiable reliance. The majority observes that in not doing so SIS "violate[d] its own as well as professional custom." The majority in effect requires SIS to act as a reasonably prudent institutional lender would act in similar circumstances. This is the principle of reasonable reliance. Under the principle of justifiable reliance, however, there is no duty to investigate. As the Supreme Court said in Field v. Mans, "[i]t is only where, under the circumstances, the facts should be apparent to one of [the creditor's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." Field v. Mans, 516 U.S. at 70-72, 116 S.Ct. at 444 (quoting from W. Prosser, Law of Torts § 108, p. 718) (4th ed.1971). The Debtor made two representations to SIS  that he had an ownership interest in the home and that his wife had signed the mortgage and other credit documents. It was certainly not "apparent" to SIS, nor should it have been, that either of these was untrue.
There is no finding below that SIS knew something which should have served as a warning it had been deceived, thereby prompting it to investigate by searching the title. There was conflicting evidence on whether SIS knew the Debtor was living apart from his wife.[2] The bankruptcy judge made no finding on this. In his findings of fact, written a few weeks after trial, he says the Debtor was divorced at the time of the credit. This is an understandable but mistaken recollection of the evidence. It was undisputed at trial that the divorce came later. The bankruptcy judge, in any event, relied upon the status of SIS as a sophisticated lender aware of the importance of a title search. He did not require, nor should he have, that SIS search the title because of some imputed knowledge from the public event of a divorce.
The majority views a title search as the "cursory" examination referred to in the official comment to Section 541 of the Restatement which was relied upon by the Supreme Court in Field v. Mans. It is not. This is demonstrated by the illustration to section 540 of the Restatement, which is the section approving reliance upon a fraudulent misrepresentation "although the recipient might have ascertained the falsity of the representation had he made an investigation." That illustration, also relied upon by the Court in Field v. Mans, reads as follows:
1. A, seeking to sell land to B, tells B that the land is free from all incumbrances. By walking across the street to the office of the register of deeds in the courthouse, B could easily learn that there is a recorded and unsatisfied mortgage on the land. B does not do so and buys the land in reliance upon A's misrepresentation. His reliance is justifiable.
Restatement (Second) of Torts § 540, illus. 1 (1976).
As the comment to section 541 of the Restatement observes, not even an experienced horseman is required to examine a horse represented as sound if the defect in question is not apparent to him "at first glance." The experience of SIS as a lender was of no aid to it here. The Debtor's lack of ownership was certainly not apparent to SIS "at first *312 glance." This is particularly so in light of its pre-existing first mortgage on the home signed by the Debtor and his wife.
The majority says an institutional lender "intentionally blinds itself" when it fails to conduct a title search. The majority apparently regards what SIS did here as analogous to an experienced horseman donning a blindfold and thus failing to see an obvious defect in the horse he is purchasing. Surely the two situations are quite different. It is the difference between positive action taken to avoid seeing a suspected defect and failure to investigate to determine whether an unsuspected defect exists. SIS simply failed to investigate in the absence of any warning signs.
There are other reasons for reversal. As mentioned, the Debtor's fraud was not confined to falsely representing he had an ownership interest in the property. He also deceived the bank into thinking his wife had signed the mortgage. The wife's signature as an apparent co-owner was obviously necessary to give SIS a valid mortgage. As the bankruptcy judge found, the Debtor thereby caused SIS to believe that the Debtor's wife knew of the mortgage and consented to it. The Debtor stipulated at trial, and concedes in his brief, that the forgery took place outside the presence of SIS. The status of SIS as a sophisticated lender familiar with title searches has no possible relevance to this misrepresentation. A title search would not have revealed the forgery.
The bankruptcy judge believed SIS should not have "blindly relied" on the signature. He stated: "Without a witness, SIS had no basis for believing that [the Debtor's wife] in fact signed her name to the document and, again, assumed the risk she was not an informed party to the transaction." This reasoning is consistent with a rely-at-your-risk principle. It does not reflect the principle of justifiable reliance.
The bank's case was not confined to the mortgage forgery. The Debtor also forged his wife's signature to the note. Here again the absence of a title search has no bearing.
If I understand the majority correctly, its affirmance is grounded on approval of the bankruptcy judge's application of the justifiable reliance standard and not on the absence of clearly erroneous factual findings. Under the principle of justifiable reliance, findings of fact are confined to the characteristics and knowledge of the recipient of a fraudulent representation and what was immediately apparent to the recipient. The ultimate determination of whether justifiable reliance has occurred is a conclusion of law based upon the resolution of these limited factual issues. See Field v. Mans (In re Mans), 210 B.R. 1, 4, 31 BCD 71, 73 (1st Cir. BAP 1997). I agree there is no dispute here on the relevant facts. But I believe they establish the presence of justifiable reliance.
NOTES
[1] That section provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt 
- - - -
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by 
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition
11 U.S.C. § 523(a)(2)(A).
[2] Cf. Shawmut Bank v. Goodrich (In re Goodrich), 999 F.2d 22 (1st Cir.1993).
[3] We view this example for what it is  a generic example. We do not believe that the court intended to except from § 523(a)(2)(A) inquiry the necessity of title review in all land transactions, any more than the Court, in the illustration that follows, intended to provide a lesson on the purchase of horses.
[4] The dissent here argues that SIS was justified in relying on the Debtor's wife's forged signatures on the note and mortgage, for there was nothing to put it on notice of the forgery and a title search would not have revealed the forgery. Even if there could be found some justifiable basis for SIS to provide a witness to attest to the forged signatures, SIS would have noted something awry with the offered mortgage if it had conducted even a cursory examination of the Sanford Property's ownership at the registry of deeds. An investigation of the transfer would have led to a discovery of the forgery.
[1] Indeed, the history of the parties' lending relationship and their restricted time frame in this transaction might well support, although not require, the conclusion there was reasonable reliance by SIS under the more factually intensive standard of reasonable reliance. The bankruptcy judge found that only four days elapsed between the Debtor's urgent request for the issuance of a letter of credit and the letter's issuance.
[2] The Debtor made no claim on the stand that he had told any official of SIS he was separated. He expressed his belief that several bank officials "were aware" of the separation. The bank's president, who had handled all the Debtor's business with the bank, denied such knowledge.